IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>                                     )<br>        v.                           )<br>                                     )<br>MATTHEW HERRON,           )<br>                                     )<br>        Defendant.              ) | Criminal Case 1:11-CR-236<br><br>Hon. James C. Cacheris<br><br>Sentencing: December 9, 2011 |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Neil H. MacBride, United States Attorney, and Claire M. Murray, Special Assistant United States Attorney, in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission Guidelines Manual, files the Position of the United States With Respect to Sentencing in the instant case.  The government has no objection to the presentence report ("PSR"), which properly calculated the final Offense Level as 23 and determined the Defendant's Criminal History to be a Category III, with a resulting Guidelines sentencing range of 57 to 71 months.  Accordingly, the Government hereby moves this Court to award the Defendant a third point for the acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b).   The Government recommends a sentence at the low end of the Guidelines range.  Such a sentence appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

     **I.**     **Background**

On September 7, 2011, Defendant appeared with counsel before this Court and pled guilty to a one-count criminal information charging him with conspiracy to distribute oxycodone, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  Upon the Court's order, Probation

Officer William C. Byerley prepared a presentence report, which noted, among other things, Defendant's extensive history of drug abuse.

A stipulated Statement of Facts was filed with the Court, outlining Defendant's actions in relation to the offense to which he pled guilty. According to the Statement of Facts, Defendant engaged in a conspiracy to distribute oxycodone from around February 2009[1] through May 2011. During the course of the conspiracy, Defendant and his co-conspirators would manufacture fraudulent prescriptions for approximately 60-120 tablets of 30 mg Roxicodone by reproducing them on computers at FedEx/Kinkos. The prescriptions contained information for a fictitious medical practice invented by the conspirators, and also bore genuine physician names and those physicians' Drug Enforcement Administration ("DEA") numbers. This physician information was used without the consent of the physicians. Finally, the prescriptions bore the phone number for the fictitious medical practice the conspirators had created. In fact, the phone number corresponded to a cell phone used by the conspiracy to verify the accuracy of prescriptions when called by pharmacies. Defendant and others filled the fraudulent prescriptions at various pharmacies throughout the Eastern District of Virginia and distributed some of the pills to others. The Defendant's main role in the conspiracy was to distribute the pills the conspiracy obtained, and to locate buyers for other members of the conspiracy, although he also filled a portion of the fraudulent prescriptions.

Throughout the conspiracy, Defendant was personally involved in the distribution of, or it was reasonably foreseeable to him that in furtherance of the conspiracy his co-conspirators

---

[1] The Government agrees with the Defendant that the Plea Agreement and Statement of Facts should be amended to indicate that the Defendant's involvement in the conspiracy began "in or about July 2010."

would distribute, an amount of oxycodone equal to at least 100 kilograms but less than 400 kilograms of marijuana.

II.     **Argument**

   A.     **Sentencing Guidelines**

Even though the Sentencing Guidelines are advisory, sentencing courts "must consult [the] Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). The Fourth Circuit has stated that "a district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Here, the Presentence Report correctly computes the recommended Sentencing Guideline range as 57 to 71 months, based on a final offense level of 23 and a Criminal History Category of III. The final Offense Level reflects that Defendant was involved in a conspiracy responsible for the distribution of an amount of oxycodone equal to at least 100 kilograms but less than 400 kilograms of marijuana, establishing a base offense level of 26 (*see* U.S.S.G. § 2D1.1(a)(5), (c)(3)), and a three-level decrease in accordance with Defendant's acceptance of responsibility (*see* U.S.S.G. § 3E1.1). The Defendant's Criminal History Category of III is based on 6 criminal history points: one point for the Defendant's 2007 convictions for Unlawful Entry and Petty Larceny, one point for the Defendant's 2009 Concealed Carry conviction, one point for the Defendant's 2011 Petit Larceny and Obtaining Money by False Pretenses convictions, one point for the Defendant's 2011 Credit Card Fraud and Petit Larceny convictions, and two points for

committing the instant offense while the Defendant was subjected to a suspended sentence in Prince William County.

      **B.**      **18 U.S.C. § 3553 Factors**

In imposing a sentence, Congress has mandated that courts consider the nature and circumstances of the offense and the characteristics of the Defendant. 18 U.S.C. § 3553(a)(1). Courts must consider the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B). In addition, a sentence should protect the public from further crimes of the Defendant and provide the Defendant with needed correctional treatment. 18 U.S.C. § 3553(a)(2)(C) & (D). A sentence must be sufficient, but not greater than necessary to comply with these purposes. 18 U.S.C. § 3553(a). Moreover, courts should consider "the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6).

           1.     *Seriousness of the Offense*

In this case, Defendant's offense is serious. As chronicled in the Presentence Report, Defendant usually distributed 30 milligram Roxicodone tablets, which are highly addictive. Roxicdone tablets are an immediate-release oral formulation of oxycodone hydrochloride, intended for the management of moderate to severe pain. *See* RXList: The Internist Drug Index, http://www.rxlist.com/roxicodone-drug.htm (last visited December 1, 2011). Percocet, another common prescription medication, which also contains the active ingredient of oxycodone hydrochloride, has between 5 and 10 milligrams per pill. A 30 milligram Roxicodone tablet is

therefore between three and six times more powerful than Percocet. Roxicodone is intended for oral use only; however, the drug can be abused if it is crushed and snorted or injected. When crushed and injected, the effect of that much oxycodone hydrochloride is more similar to a heroin injection than to a swallowed Roxicodone pill. The seriousness of the offense and the quantity of Roxicodone that the Defendant distributed are taken into consideration by the Guidelines with the initial offense level of 26, as stipulated to in the Plea Agreement. A Guidelines sentence will reflect the seriousness of the Defendant's criminal behavior.

        2.    *Retribution and Deterrence*

A sentence within the Guideline range will also adequately punish Defendant's serious behavior while serving as a deterrent both to him and others in the community. Defendant's involvement in this conspiracy lasted from July 2010 to May 2011. It was a large-scale operation, resulting in numerous fraudulent prescriptions for thousands of illegally obtained Roxicodone pills. This was not a simple case of a drug addict obtaining oxycodone pills from a doctor through deceit. Rather, the Defendant and his co-conspirators went a step further and began manufacturing fraudulent prescriptions. They stole physician identification information and used the identities of innocent third parties to fill their fake prescriptions. Over the course of the conspiracy, the Defendant, along with his co-conspirators, obtained oxycodone pills by fraud and distributed the pills thereby obtained.

As Defendant and others in the community have learned, it often appears fairly simple to produce a fraudulent prescription and have that prescription filled at a pharmacy. The process of obtaining Roxicodone pills by fraud seemingly involves minimal risk for drug dealers and addicts alike, and both parties tend to continue with their crime on a weekly, or even daily, basis.

However, the Sentencing Commission has made clear that such a crime is indeed serious, and that a strong message of deterrence needs to be sent through the punishment for such crimes. Accordingly, the Guidelines recommend a sentence of 57-71 months in this case. Such a sentence would deter the Defendant and others in the community from fraudulently altering prescriptions, obtaining Schedule II drugs by fraud, and selling them for profit in the future. When drug addicts and dealers hear of the lengthy prison sentences handed out to others convicted for distributing oxycodone, they may reconsider the tremendous risk involved in illegal prescription drug distribution.

### 3. *Incapacitation and Correctional Treatment*

A Guidelines-range sentence will also protect the public from further crimes by the Defendant by incapacitating him while also providing him with the opportunity to receive substance abuse treatment and training in prison. Defendant has a "lengthy history of substance abuse which began with his introduction to alcohol and marijuana at age 11." *See* PSR ¶ 66. He has since used cocaine, LSD, heroin, hallucinogenic mushrooms, and prescription opiates (Roxicodone and Dilaudid). Prior to his incarceration in the instant matter, the Defendant "ingested between 5 and 30 pills of varying strengths per day," which he typically injected intravenously for a heightened narcotic effect. *See* PSR ¶¶ 67-68. Thus far, the Defendant's has been unable to break his drug habit, despite participation in substance abuse programs and this Court's supervision. *See* ¶¶ 67, 69-70. However, the Defendant has expressed interest in continuing substance abuse treatment, and the Government is hopeful that he will benefit from the Bureau of Prisons' 500-hour intensive drug program. *See* PSR ¶ 71. A Guidelines-range sentence will protect society from potential future drug-related crimes by the Defendant while

also giving him the opportunity to take advantage of various substance-abuse and education programs offered in prison.

### 4. *Unwarranted Sentence Disparaties*

The Defendant is the fifth of five co-conspirators to be sentenced, following Jessica Hoops, Matthew Mitchell, Michael Jackson, and Margaret Jackson. On September 2, 2011, this Court sentenced Jessica Hoops to 36 months of incarceration, to be followed by 3 years of supervised release. Ms. Hoops had less criminal history than the Defendant; accordingly, she was in Criminal History Category II, rendering her Guidelines lower than the Defendant's. Moreover, Ms. Hoops' participation in the conspiracy was aberrational from her pre-conspiracy life as the upstanding president of her daughter's PTA. Finally, her role in the conspiracy (verifying prescriptions by phone) meant that she was involved with a smaller portion of the drugs the conspiracy acquired than was the Defendant, who filled fraudulent prescriptions, sold pills himself, and lined up drug buyers for other members of the conspiracy. On September 16, 2011, this Court sentenced the conspiracy's leader, Michael Jackson, to 36 months of imprisonment, to be followed by three years of supervised release. Mr. Jackson's involvement in the conspiracy was undisputedly significantly greater than the Defendant's. However, Judge Lee varied downward substantially in sentencing Mr. Jackson due to Jackson's truly horrific childhood and upbringing. The Defendant is fortunate to have been raised in a "supportive environment." *See* PSR ¶ 60. Accordingly, the reason underlying Mr. Jackson's downward variance do not support a variance in his case. On October 21, 2011, this Court sentenced Matthew Mitchell to 30 months of imprisonment, to be followed by three years of supervised release. Because Mr. Mitchell had no Criminal History points, he was "safety valve" eligible,

7

significantly lowering his Guidelines. Also on October 21, 2011, this Court sentenced Margaret Jackson to 48 months of incarceration, to be followed by 3 years of supervised release, based on her Guidelines range of 51 to 63 months.

The Government readily concedes that the Defendant was not the mastermind of the scheme at hand. Rather, Michael Jackson, Margaret Jackson, and Matthew Mitchell each played a larger and more substantive role in the conspiracy than did either the Defendant or Jessica Hoops. Moreover, the Government acknowledges that the Defendant has been cooperative since his arrest; indeed, the Government thinks it extremely likely that it will file a Rule 35 motion on his behalf in the next few months. Nonetheless, the Government submits that a sentence at the low end of the Guidelines is appropriate. Almost uniquely in the conspiracy, the Defendant was raised in a loving and supportive family. Nonetheless, at a relatively young age, he has amassed a significant criminal record and has sold large quantities of illicitly obtained prescription drugs throughout northern Virginia, both as part of the conspiracy and separate from the conspiracy. What's more, the defendant failed repeatedly to abide by this Court's requirements during his period of supervision.

In summary, a sentence at the low end of the Guideliens is necessary to punish the Defendant for his extensive involvement in oxycodone distribution and to deter him from committing further crimes. The Government recognizes that a concern in this case is the need for adequate drug treatment for the Defendant. A sentence of this length will ensure that the Defendant receives the rehabilitation he needs, while taking into account the level of culpability of the Defendant in the conspiracy, as balanced against his drug addiction. Finally, the Government would request that this Court recommend the Defendant for placement in the

Bureau of Prisons' 500-hour intensive substance abuse program, and that he be incarcerated in a facility as close to his family's residence as possible.

### III. Conclusion

For the reasons stated, the United States respectfully requests that this Court find that an amount of oxycodone equivalent to between 100 kilograms and 400 kilograms of marijuana is attributable to the Defendant's conduct and that, after taking into account the Defendant's timely acceptance of responsibility, the Defendant's total Offense Level is 23 and Criminal History Category is III, which results in an advisory sentencing range of 57 to 71 months. The United States submits that a within-Guidelines sentence is appropriate and reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a).

        Respectfully Submitted,
        Neil H. MacBride
        United States Attorney

By:     /s/
        Claire M. Murray
        Special Assistant United States Attorney
        Counsel for the United States
        United States Attorney's Office
        2100 Jamieson Avenue
        Alexandria, VA 22314
        202-514-1253 (phone)
        claire.murray@usdoj.gov

CERTIFICATE OF SERVICE

       I hereby certify that on the 2nd day of December, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Stephen C. Shannon
Bruce M. Blanchard
Odin Feldman & Pittleman PC
9302 Lee Highway
Suite 1100
Fairfax, VA 2201

I hereby certify that I will send a copy via electronic mail to:

William Byerley
U.S. Probation Officer
10500 Battleview Parkway
Suite 100
Manassas, VA 20109
william_byerley@vaep.uscourts.gov

                                            /s/
                                          Claire M. Murray
                                          Special Assistant United States Attorney
                                          Counsel for the United States
                                          United States Attorney's Office
                                          2100 Jamieson Avenue
                                          Alexandria, VA 22314
                                          202-514-1243 (phone)
                                          claire.murray@usdoj.gov